IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TAU A. PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-592-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| WACHOVIA DEALER SERVICES, INC., | ) | |
| a California Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Lisa Johnston-Porter
Carr Schwartz Butterfield, LLC
155 B Avenue, Suite 240
Lake Oswego, Oregon 97035

    Attorney for Plaintiff

Robert C. Dougherty
1130 S.W. Morrison Street, Suite 210
Portland, Oregon 97205-2213

    Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Tau A. Porter brings suit against defendant Wachovia Dealer Services, Inc. for breach of contract and unlawful debt collections practices arising out of defendant's attempted collection of Porter's auto loan. Before the court is defendant's Motion for Summary Judgment (#6). For the following reasons, I grant in part and deny in part defendant's Motion for Summary Judgment.

## BACKGROUND

Defendant has moved for summary judgment on behalf of "Wachovia Dealer Services, Inc. fka WFS Financial, Inc. and dba WFS Financial." It explains that in July 2005, Porter purchased a 2000 Cadillac Escalade, financed through WFS Financial Inc. ("WFS"). The Retail Installment Contract required monthly payments of $574.01, required Porter to pay interest on the unpaid principal balance at an annual rate of 19% per annum, and granted WFS a security interest in the vehicle. The Retail Installment Contract also provided that Porter would pay a late fee of 5% for any payment made 10 days after the due date, and that if he became in default, WFS would have the right to repossess the vehicle, as well as all of the rights of a secured creditor under the Uniform Commercial Code ("UCC") as adopted in Oregon. The title of the vehicle names WFS the security interest holder.

Porter fell one month behind in his payments in March of 2007. On March 14, 2007, Porter informed defendant that he intended to refinance his home and needed to know the payoff amount of the loan. There is some dispute between the parties about the content of that March 14th conversation. Defendant asserts that its representative informed Porter the payoff amount was $18,727.53, and that it was good through March 19, 2007. Porter contends that he was told

Page 2 - OPINION AND ORDER

the payoff was $18,162.  Porter also makes a point of noting that he spoke with a representative from Wachovia, and not someone from WFS.

On March 17, 2007, Wachovia sent Porter an account statement showing an account balance of $18,162.09, including a Past Due amount of $1,183.02.  Directly under the balance information, the account statement advised Porter that:  "This balance represents your outstanding balance as of the statement date and is not your payoff.  For a payoff calculation, please visit our Web site or call 800-280-8004."  Aff. of Terry Stalnaker in Supp. of Wachovia Dealer Services, Inc.'s Mot. for Summ. J. (hereinafter "Stalnaker Aff.") Ex. 4.

Defendant explains that the difference between the balance on the account statement and the payoff amount is that the balance on the account statement is calculated based upon the payment schedule as if payments had been timely made, whereas the true payoff would include accrued but unpaid interest on the unpaid principal balance to the date of receipt of payment, any applicable late fees, and other charges incurred to the date of receipt of the actual payoff.

Porter asserts that Wachovia contacted Porter on an almost daily basis during the two weeks following the March 14, 2007, conversation.  According to Porter, the representative requested that the loan be paid immediately or Wachovia would repossess the vehicle.  Defendant disputes these assertions, but does admit that Porter informed it that he intended to pay the loan in full from a refinance.

Porter called the Wachovia local office the day of funding[1] and was told that it would cost significantly more than he anticipated to pay the car off.  He contacted his counsel to see if she could settle his payoff amount with Wachovia.

---

[1]Porter does not specify the date.

Page 3 - OPINION AND ORDER

Defendant claims to have called Porter on April 3, 2007, but Porter disputes that the company called. Defendant contends that during the call, Porter informed the company that the refinance was taking longer than expected. According to defendant, because the prior payoff date had expired, the company provided Porter with a new payoff amount good through April 13, 2007, of $18,963.88.

On April 5, 2007, Porter's counsel sent a letter to defendant's payment processing center together with a check in the amount of $18,162, showing the buyers as Porter and his counsel. The letter offered to settle the account in full for $18,162.

Defendant explains that it applied the payment to the account on April 9, 2007. According to defendant, the payment processing center processes thousands of transactions each day. Employees at the payment processing center are not authorized to settle claims or accept any instrument in full satisfaction of an account. The employees simply receive and enter payment information. The offer to accept the check in full satisfaction of the account was not accepted in writing by an officer or employee of defendant with actual authority to accept the instrument in full payment of the account.

On April 13, 2007, Wachovia called Porter about the payment and Porter informed the company that he and his counsel were going to dispute the balance. According to defendant, the company informed Porter that it would not release the title to the vehicle until the account was paid in full.

Later that same day, defendant asserts, a representative from the company tried to contact Porter's counsel but received no answer. Porter contends that he is without information to admit or deny this fact.

Page 4 - OPINION AND ORDER

On April 16, 2007, at 8:44 A.M. defendant left a voice message for Porter's counsel requesting that she return the call up until 5:00 P.M. that day. One minute later, defendant called Porter. According to defendant, it got no answer, but later that day at 11:59 A.M. Porter contacted the company and told the representative that the account was paid because a note was included with a check stating that the check for $18,162 was tendered in full payment of the account. Also according to defendant, the company representative told Porter that he had not seen a letter, that the check was in an amount less than the payoff amount, and that defendant would not release title without full payment. According to Porter, however, defendant reached Porter at 8:45 A.M., and told him that it had a right to contact Porter directly, told Porter that he owed over $700, that the company would not release the title if he did not pay, and that the company would repossess the car.

On April 16, 2007, Porter's counsel faxed defendant a letter enclosing her earlier letter of April 5, 2007, demanding return of the $18,162 and threatening suit for defendant's attempts to collect the account balance and for its decision to withhold the title.

Also on April 16, 2007, Wachovia's California office sent a statement to Porter indicating that he owed an additional $86.19 for the late payment but that the balance on his loan was $0.09. Porter received the letter on April 19, 2007.

Porter received another statement on May 17, 2007, indicating that the total amount due was $86.19 with a loan balance of $0.09. Porter never received a statement from Wachovia indicating that he owed $700 or more to pay off his loan.

To date, defendant has not returned the $18,162, or any portion of it, and has not sent Porter the title to the car.

Page 5 - OPINION AND ORDER

Defendant explains that in the regular course of business, it does not release the title to a vehicle until it has received full payment of a secured account, and it regularly exercises the right to repossess vehicles after a default.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Defendant asks you to grant its motion for summary judgment on the following claims: Fair Debt Collection Practices Act, breach of contract and Oregon Unlawful Debt Collection Practices Act.

I.      Fair Debt Collection Practices Act ("FDCPA")

Defendant asserts that it is not a third-party debt collector and is therefore not subject to the FDCPA. 15 U.S.C. § 1692(a)(6). Accordingly, it argues, it is entitled to judgment on this claim.

The FDCPA defines the term "debt collector" to mean "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the

Page 6 - OPINION AND ORDER

collection of any debts . . . owed or due . . . another." 15 U.S.C. §1692a(6).  In addition, the FDCPA defines "debt collector" to exclude "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person[.]"  15 U.S.C. § 1692a(6)(F).  Nevertheless, this exclusion does not apply if the creditor, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).

Porter asserts that the FDCPA applies to Wachovia because it did not originate the loan, WFS did.  Alternatively, WFS, as the creditor, used a name other than its own in attempting to collect the debt.  Porter entered into a Retail Installment Contract with WFS Financial.  When it called Porter, however, defendant called itself Wachovia Dealer Services, Inc., not WFS.  According to Porter, this led Porter to believe that Wachovia was a third party debt collector.  Accordingly, following Porter's logic, defendant is a debt collector and is subject to the strictures of the FDCPA.

There is no triable issue of fact as to whether Wachovia was a debt collector under the FDCPA, as opposed to the originator of the loan.  First, Porter admits in his Complaint that, "Plaintiff obtained an auto loan from WFS Financial, an assumed business name of Defendant Wachovia . . . for the purchase of a 2000 Cadillac Escalade."  Complaint ¶ 3.  Additionally, Porter's counsel's settlement offer was directed to "WFS Financial/Wachovia."  Decl. of Lisa Johnston-Porter Ex. A-1.  Indeed, Porter does not allege in his Complaint that Wachovia said it was collecting the debt for another entity, that the debt had been assigned to it, or that WFS used a false name to imply it was collecting the debt for another.

Page 7 - OPINION AND ORDER

Furthermore, even if Porter had properly plead allegations to support his theory that Wachovia was a debt collector, as that term is defined in the FDCPA, a March 2007, monthly statement to Porter provided proper notice that WFS had changed its name to Wachovia. The notice read as follows:

> It's Official
>
> Our new name is
> Wachovia Dealer Services.
>
> In 2006, WFS Financial joined the Wachovia family, **and** our name is now Wachovia Dealer Services. You'll begin to see our new logo, and you'll find us online at wachoviadealer.com, our new Web site address.

Stalnaker Aff. Ex. 4 at 1. Porter raises no issue of material fact drawing into question his receipt of this notice. Moreover, the April and May, 2007, statements attached to his declaration contain the Wachovia name, and each directed Porter to make his check payable to Wachovia.

Accordingly, even under the least sophisticated consumer standard, the change of the company name in 2006 could not have misled Porter to believe that Wachovia was a debt collector, and not the holder of his loan. See Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (violations of the FDCPA are evaluated using a least sophisticated debtor standard).

Since there is no allegation, or evidence, that Wachovia was a debt collector, as opposed to the originator of Porter's loan, defendant is entitled to judgment on this claim.

II.   Breach of Contract

Porter argues that he and defendant entered into a new contract, in the form of a settlement agreement, which was established when defendant cashed the check attached to his

counsel's settlement offer. Alternatively, Porter argues, if cashing the check does not constitute acceptance of his offer, defendant accepted the settlement offer when it refused to return the check.

Defendant contends that ORS 73.0311, a section of the UCC as adopted by Oregon, provides that cashing a check accompanied by a statement that the check is offered in full satisfaction of a debt is not binding on the lender. The statute provides:

> The negotiation of an instrument marked "paid in full," "payment in full," "full payment of a claim," or words of similar meaning, or the negotiation of an instrument **accompanied by a statement** containing such words or words of similar meaning, does not establish an accord and satisfaction that binds the payee or prevents the collection of any remaining amount owed upon the underlying obligation unless the payee personally, or by an officer or employee with actual authority to settle claims, agrees in writing to accept the amount stated in the instrument as full payment of the obligation.

ORS 73.0311 (emphasis added).

Defendant is entitled to judgment on this claim. ORS 73.0311 invalidates Porter's argument that defendant accepted his settlement offer when it cashed the check. Porter provides no evidence that defendant agreed to accept the written offer accompanying his check.

With regard to whether defendant's refusal to return the check could constitute acceptance of the settlement offer, the court must examine "the parties' objective manifestations of intent, measured by whether a reasonable person would construe a promise from the words and acts of the other." <u>Wooton v. Viking Distributing Co., Inc.</u>, 136 Or App. 56, 59, 899 P.2d 1219 (1995). In this case, defendant's refusal to return the check cannot constitute acceptance when the refusal was accompanied with defendant's statements that the check did not settle the account–there was no mutual assent to the terms of any settlement agreement.

Page 9 - OPINION AND ORDER

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's breach of contract claim is granted.

III.    Oregon Unlawful Debt Collection Practices Act ("OUDCPA")

Porter alleges five violations of ORS 646.639(2). That statute, in relevant part, makes it an

> "unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:
>
> * * *
>
> (c)    Threaten the seizure, attachment or sale of a debtor's property when such action can only be taken pursuant to court order without disclosing that prior court proceedings are required.
>
> * * *
>
> (e)    Communicate with the debtor or any member of the debtor's family repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor or any member of the debtor's family.
>
> * * *
>
> (k)    Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take.
>
> (L)    Use any form of communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a governmental agency, governmental official or an attorney at law when it is not in fact so approved or authorized.
>
> (n)    Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law.

ORS 646.639(2).

Page 10 - OPINION AND ORDER

A. <u>Threatening Repossession Without Disclosing the Necessity of a Court Order</u>

The OUDCPA makes it unlawful for a company to "threaten the seizure, attachment or sale of a debtor's property **when such action can only be taken pursuant to court order** without disclosing that prior court proceedings are required." ORS 646.639(2)(c) (emphasis added).

Porter contends that defendant threatened to repossess the vehicle, without also telling Porter that such action can only be taken pursuant to a court order and with prior court proceedings.

Defendant argues that under ORS 79.0609 and under the contract, it has the right to take possession of the car after default and no court order or proceedings are required. ORS 79.0609, a provision of the UCC as adopted by Oregon, permits a secured party to take "possession of the collateral" after default and allows the secured party to do so "[w]ithout judicial process, if it proceeds without breach of the peace." ORS 79.0609(1) and (2). Additionally, the contract defines a default to occur when "any payment on this contract isn't received when it is due[.]" Stalnaker Aff. Ex. 1 at ¶ 8.1. In the contract, Porter agreed that defendant could demand that he return the property to it at a reasonably convenient location," <u>id.</u> ¶ 9.3, and that defendant could "take the Property from [Porter] without notice" and "may enter any place where the Property is located to take it" as long as it does not cause a "breach of the peace." <u>Id.</u> ¶ 9.4.

Based on the above authority, since no court order was required, defendant did not violate the OUDCPA when it threatened to take the car without disclosing that a court order was necessary. Defendant is entitled to judgment on this claim.

Case 3:07-cv-00592-KI    Document 20    Filed 09/12/07    Page 12 of 15

B.   <u>Harassing Communications</u>

Porter initially alleged that defendant violated Oregon law when it contacted him knowing he was represented by an attorney, but he has since recognized that contacting a represented party is not a violation of the statute. Unlike the FDCPA, the OUDCPA does not prohibit contact with a represented party.

Porter now argues that defendant violated ORS 646.639(2)(e) when it contacted him after he referred the representative to his attorney. That provision makes it unlawful for a company to "communicate with the debtor or any member of the debtor's family repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor or any member of the debtor's family." ORS 646.639(2)(e).

It is unclear from the facts exactly when Porter asked Wachovia to contact his attorney rather than him. Nothing in Porter's settlement offer of April 5, 2007, demands that Wachovia cease all communications with Porter. According to the parties' statements of facts, it appears the only communications subsequent to that offer occurred on April 13 and 16, 2007. Porter testified in his declaration that he told Wachovia "on at least two occasions following payment and settlement offer, to stop contacting me directly and to speak with my attorney." Decl. of Tau A. Porter ¶ 7. Defendant also admits that when it failed to reach Porter's counsel at 8:44 A.M. on April 16, it called Porter one minute later. Porter contends defendant's only reason for contacting him was to harass and annoy him.

In sum, Porter points to two telephone calls demonstrating that defendant ignored his request to contact his counsel rather than him. Given that defendant knew Porter was represented by counsel as early as April 5, 2007, the fact that defendant made more than one call to Porter

Page 12 - OPINION AND ORDER

after Porter specifically referred defendant to his counsel, and considering the timing of the calls to counsel and to Porter, I cannot find as a matter of law that defendant's conduct does not qualify as "communicat[ing] with the debtor . . . repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor. . . ." ORS 646.639(2)(e). Accordingly, a material issue of fact remains as to whether defendant's conduct violated the statute and defendant's motion for summary judgment is denied on this claim.

      C.      <u>Threatening to Take an Action that Defendant Would Not Normally Take</u>

The OUDCPA makes it unlawful for a company to "attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take." ORS 646.639(2)(k).

Defendant explains that it has the right to withhold title to the vehicle until it receives payment, and to repossess the vehicle, and it exercises these remedies in the course of business.

Porter contends that defendant had no right to repossess the vehicle, and therefore no right to threaten repossession, when Porter was no longer in default. According to Porter, two of the calls threatening repossession were made after Porter's $18,162 check had been applied to his account.

During oral argument, defendant asserted that Porter was in default because he did not intend to pay the remaining balance, and the company regularly exercises its right to repossess vehicles after a default. I note that default is defined in the contract to include the occasion when Wachovia forms "a good faith belief that the prospect of [Porter's] payment or performance is impaired." Stalnaker Aff. Ex. 1 at ¶ 8.9. According to defendant, during the April 13, 2007,

Page 13 - OPINION AND ORDER

telephone conference Porter "informed WFS that he and his counsel were going to dispute the balance" and his alleged April 16, 2007, announcement that "he would not pay the balance of the account." Stalnaker Aff. ¶¶ 8, 9, Ex. 6, 7. According to defendant, Porter's statements are evidence of an anticipatory breach and Porter's intention not to pay the balance was properly deemed a default, such that the company could threaten to repossess the car.

Porter denies that he said he was not going to pay any remaining balance at the time defendant threatened repossession of the car. Accordingly, a material issue of fact remains as to whether Porter was in default at the time defendant threatened to repossess the car, and whether in these circumstances–where a borrower has paid a large sum of money in an attempt to resolve the loan, and believes it to be settled, and where his current loan payment due is nine cents–defendant would repossess the car. Defendant's motion for summary judgment is denied on this claim.

### D.   Using a Form of Communication that Simulates Legal Process

The OUDCPA makes it unlawful for a company to "use any form of communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a governmental agency, governmental official or an attorney at law when it is not in fact so approved or authorized." ORS 646.639(2)(L).

Porter offers no allegation or evidence that defendant attempted to create an impression that its calls were sponsored by the government or a judicial process. Accordingly, defendant is entitled to judgment on this claim.

E.     Attempting to Collect Interest in Excess of Actual Debt Unless Authorized

The OUDCPA makes it unlawful to "collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law." ORS 646.639(2)(n).

Porter argues that his offer of settlement was accepted, and therefore any attempt to collect other fees was a violation of the OUDCPA.

Defendant is entitled to judgment on this claim because, as I stated above, the parties never settled the debt. As a result, defendant was authorized to attempt to collect interest and late fees. Defendant is entitled to judgment on this claim.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (#6) is granted in part and denied in part. Porter's first, second, and portions of his third claims are dismissed. The only remaining claims are: whether defendant "communicated with the debtor . . . repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor. . . ." in violation of ORS 646.639(2)(e), and whether defendant "attempt[ed] to or threaten[ed] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten[ed] to take any action which the debt collector in the regular course of business does not take" in violation of ORS 646.639(2)(k).

IT IS SO ORDERED.

Dated this ___12th___ day of September, 2007.

                                               ___/s/ Garr M. King___
                                               Garr M. King
                                               United States District Judge